IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SHERRYL MAGWOOD HASELDEN, ) | CIVIL ACTION NO. 9:15-4717-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] in September 2006, alleging disability since August 1, 2001 due to Hepatitis C, headaches, seizures, and a learning disability. (R.pp. 101-109, 133). Plaintiff's applications were denied initially and upon reconsideration, as well as by an Administrative Law Judge (ALJ) after a



---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

hearing. (R.pp. 8-43). The Appeals Council denied Plaintiff's request for review, following which Plaintiff filed suit in this United States District Court. Haselden v. Astrue, C.A. No. 9:10-545. The decision of the Commissioner was thereafter reversed and remanded by this Court, following which the Appeals Council vacated the ALJ's decision and sent the case back to the ALJ for further proceedings. (R.pp. 423-432). The ALJ then held a second hearing on October 8, 2011, following which he issued a decision on January 27, 2012, again finding that Plaintiff was not disabled and denying Plaintiff's claims. (R.pp. 362-407).

Following Appeals Council review upholding this decision, Plaintiff again filed suit in United States District Court. Haselden v. Colvin, C. A. No. 9:12-872. The decision of the Commissioner was thereafter again reversed and remanded by this Court for a determination of whether Plaintiff met the requirements for disability of Listing 12.05C.[2] The Appeals Counsel then sent the matter to a different ALJ for further proceedings, following which another hearing was held on July 25, 2014. (R.pp. 611-647, 694). This new ALJ thereafter denied Plaintiff's claims in a decision issued August 28, 2014. (R.pp. 599-610). The Appeals Counsel denied Plaintiff's appeal of this decision, thereby making the August 2014 decision of the ALJ the final decision of the Commissioner. (R.pp. 587-592).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an outright award of benefits. The Commissioner contends that the decision to

---

[2]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).



deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was forty-three (43) years old on August 1, 2001 (when she alleges she became disabled), has a marginal education[3] with past relevant work experience as a dock worker, security guard, and cleaner. (R.pp. 101, 146, 199-204). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[4] of borderline intelligence and a seizure disorder, she nevertheless retained the residual functional capacity (RFC) to perform work at all exertional levels, limited to work that requires only simple repetitive tasks without ongoing interaction with the general public and no exposure to work hazards. (R.pp. 602, 605). The ALJ further determined that Plaintiff was capable of performing her past relevant work as a hand packer with these limitations as well as other jobs that exist in significant numbers in the national economy, and that Plaintiff is therefore not entitled to disability benefits. (R.pp. 608-610).

Plaintiff asserts that in reaching this decision, the ALJ erred by performing a faulty listing analysis, and by improperly considering and evaluating the subjective testimony as to the extent of Plaintiff's limitations. Plaintiff further argues that the additional evidence submitted to the

---

[3]Plaintiff testified at her first hearing that she thought she had completed school through the ninth grade. (R.p. 23).

[4]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



Appeals Counsel was not properly considered. After careful review and consideration of the record in this case and the arguments from the parties, the undersigned is constrained to agree with the Plaintiff that the decision must be reversed. Even so, as is set forth hereinbelow, Plaintiff is not entitled to a remand for an award of benefits at this time.

Plaintiff's applications have proceeded through a convoluted claim decision history, which includes (as previously noted) two previous remands from this Court back to the Commissioner for further proceedings. Plaintiff's applications were originally denied at the administrative level, both initially and upon reconsideration, as well as by an ALJ after a hearing and by the Appeals Council on review. However, on appeal to this Court the undersigned recommended reversal of the decision with remand for the purpose of obtaining vocational expert testimony to establish whether Plaintiff could perform other work with her non-exertional limitations, a recommendation that was adopted (as modified) by the District Judge. (R.pp. 424-429). Following a second hearing on her applications, Plaintiff's claims were again denied both by the ALJ as well as by the Appeals Council. Plaintiff again appealed to this Court, but after a review of the record and decision the undersigned this time concluded that the decision was supported by substantial evidence in the case record and recommended that the decision be affirmed. (R.pp. 675-691). However, the District Judge concluded on de novo review that the ALJ had erred in evaluating whether Plaintiff met the Paragraph C requirements of Listing 12.05, and had failed to adequately explain his consideration of evidence that might support a finding of deficits in adaptive functioning in the Listing 12.05C analysis, and therefore again reversed and remanded the administrative decision. (R.pp. 667-674).

As a result of that remand order, Plaintiff has now gone through the administrative



process a third time, this time before a different ALJ, who after a hearing again concluded that Plaintiff is not disabled for purposes of either DIB or SSI, a decision which the Appeals Council has again upheld.  As before, Plaintiff has appealed the denial of her applications to this United States District Court.  In her appeal, Plaintiff continues to fault the ALJ's listing analysis, while also arguing that the Appeals Council did not properly consider new evidence that was submitted to it as part of Plaintiff's appeal of the ALJ's decision.[5]  While the undersigned certainly agrees with the Plaintiff, as well as the Defendant, that it is time to bring some finality to these applications, the undersigned is bound by Fourth Circuit precedent with respect to how such claims are to be reviewed.  These precedents unfortunately require yet another reversal with a remand of Plaintiff's applications, all as is more fully set forth below.

### New Evidence Submitted to the Appeals Council

In compliance with the most recent remand order in this case, the ALJ spent some time in his decision discussing Plaintiff's mental impairment, and in particular whether Plaintiff had significant limitations in her adaptive functioning. (R.pp 599, 603, 605). See (R.pp. 667-674). As was noted in a previous Report and Recommendation issued in this case,

> Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socio cultural background, and community setting.

Diagnostic and Statical Manual of Mental Disorders (DSM) - IV, p. 39.

Areas to be considered when discussing adaptive functioning may include such areas as

---

[5]It is unclear why this new evidence had never been presented by Plaintiff in any of her earlier administrative proceedings, but in any event, the Appeals Council considered this new evidence and made it a part of the record. (R.p. 588). Therefore, it is part of the record before this Court for review.



communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. Id. See Wiley v. Epps, 625 F.3d 199, 216 (5th Cir. 2010).

The ALJ concluded that a preponderance of the evidence indicated that Plaintiff has shown sufficient adaptive skills to refute a finding of mental retardation sufficient to satisfy the requirements of Listing 12.05C.[6] (R.p. 605). Specifically, the ALJ found that Plaintiff is able to care for her personal hygiene, cook, clean, perform yard work, engage in such activities as attending church and visiting friends, that she is able to pay bills, count change, handle a savings account and use a checkbook, that she reads and can sew, that she was able to "navigate her way through the process of acquisition of illicit substances", and was able to work in a family business where, although she was not asked to handle money, she was able to correctly pack seafood orders, thereby demonstrating "understanding and recognizing the type and amount of each specific item of evidence of having adaptive skills". (R.pp. 603-605). As support for these findings, the ALJ mainly cited to Plaintiff's own Function Report as filled out by her on October 12, 2006, as well as the findings of consultative physician Dr. Barton Saylor. See (R.pp. 162-169, 294-297). The ALJ also weighed and evaluated the testimony of Marcia Turner, Plaintiff's cousin, who testified at the administrative

---

[6]Listing 12.05 defines mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Paragraph C of § 12.05 requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning.
   It is not disputed that Plaintiff has a valid verbal, performance, or full scale IQ of 69, and that Plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function. (R.p. 604). However, in order to meet the required level of severity to fall under this Listing, Plaintiff's impairment must still also satisfy the diagnostic description (i.e., significantly sub-average general intellectual functioning with deficits in adaptive functioning). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(a).



hearing, but gave Turner's testimony "limited weight".

Turner testified that Plaintiff had always been "slow", that she pretty much has to do everything for the Plaintiff, that Plaintiff has a learning disability and got through school primarily by social promotions, that she can only read "basic words" but cannot read or comprehend anything like a book, that Plaintiff's family pays all of her bills, and that she has never worked other than at her family's business (a seafood operation), where Plaintiff basically "would bag shrimp and fish" but would not handle money. However, when questioned by the ALJ about Plaintiff's generally adequate scores on various tests during the period she was in school, Turner stated that it would "shock" her to know that she had scored that high. She also testified a little bit as to Plaintiff's past drug use, but did not believe Plaintiff had a drug problem at that time. See generally, (R.pp. 622-628). As noted, the ALJ did not give Turner's testimony much weight, finding that she "readily admit[ed] having limited information" regarding Plaintiff's drug history or her school history. The ALJ further found that, with respect to Turner's testimony regarding Plaintiff's past relevant work and the accommodations Plaintiff's family had to make for her in order to allow her to work, that Turner was not herself employed by the family business and again gave limited credibility to her testimony. (R.pp. 606-608).

After discounting Turner's testimony, the ALJ found based on the other evidence, and in particular with respect to Plaintiff's work history, that Plaintiff had shown sufficient adaptive skills to refute a finding that she met the requirements of Listing 12.05 because she had been able to work in the family business for a number of years, that it was "reasonable to assume that if [Plaintiff] were incorrectly packing orders on a routine basis, she would not have been retained in the position", and that Plaintiff's allegation that she is incapable of all work activity was not entirely



credible "because of [the] significant inconsistencies" in the record as a whole and in light of her extensive activities of daily living. (R.pp. 605, 607-608). As part of his findings, the ALJ further concluded that there was no evidence that Plaintiff had been required to live in a highly supportive living arrangement. (R.p. 603).

As part of her appeal of the decision in this case, Plaintiff submitted additional evidence to the Appeals Council consisting of statements from two brothers and a niece, which directly addresses some of the ALJ's findings. Unlike Turner, whose testimony the ALJ gave little weight due to her lack of direct knowledge with respect to these issues, Plaintiff's brothers have direct knowledge of Plaintiff's work at the family seafood business and proceed to detail numerous problems Plaintiff had on the job, including that they could not count on her to do even simple things right, that she could not do a good job weighing shrimp or fish, that if customers called in an order she would get them wrong and give the person the wrong order, that she had to be watched, redirected and supervised at all times, that she was generally unreliable and also had poor attendance, that she would frequently not behave appropriately and would use bad language or talk about personal issues in front of customers, and that no other employer would have ever put up with such poor work from an employee who was not family. These individuals also discuss Plaintiff's school history, including that Plaintiff's mother would do her homework for her which might account for some of the higher grades (cited by the ALJ at the hearing) Plaintiff got in school, that she seemed incapable of learning and made the same mistakes over and over again at school, at home, and at work, and that she was basically just passed up to the next grade because she was so much older than all of the other kids. Finally, these individuals also discussed Plaintiff's dependance on others and that this has been the case throughout her entire life, stating that she has never been an independent



adult, that she has to be watched and redirected constantly, and that she cannot stay focused or concentrate even on something she knows how to do. See generally, (R.pp. 790-795).

As noted, this new evidence was submitted to the Appeals Council as part of Plaintiff's appeal, and pursuant to 20 C.F.R. §404.970

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence . . . where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

In order to be "new" evidence, the evidence must not be "duplicative or cumulative"; and in order to be "material", there must be a "reasonable possibility that it would have changed the outcome". Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). This evidence was obviously "new", since it was not evidence that had been considered by the ALJ and addressed issues on which the ALJ had found Turner had little or no knowledge. It was also "material", as it consists of opinions from Plaintiff's family members as to Plaintiff's condition and limitations with respect to specific issues addressed by the ALJ in his RFC findings, and which directly contradict many of those findings. Even so, the Appeals Council found that this "additional evidence does not provide any information that would warrant a change in the Administrative Law Judge's decision" and denied Plaintiff's request for review. (R.p. 588). The undersigned concludes that the Appeals Council committed clear error in making this finding under the facts of this case.

The proper manner and procedure for the handling of new evidence submitted to an Appeals Council was discussed extensively by the Fourth Circuit in Meyer v. Astrue, 662 F.3d 700



(4th Cir. 2011). When a claimant requests review of an ALJ decision, the Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the ALJ. Where a claimant submits additional evidence that was not before the ALJ when requesting review by the Appeals Council, if the evidence is new and material the Appeals Council is the evaluate the entire record including the new and material evidence to see if it warrants any change in the ALJ's decision. If, after this evaluation, the Appeals Council finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record, it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. Conversely, if upon consideration of the evidence, including any new and material evidence, the Appeals Council finds that the ALJ's action, findings or conclusions are not contrary to the weight of the evidence as a whole, the Appeals Council can simply deny the request for review. See generally, Meyer, 662 F.3d at 704-705. That is what the Appeals Council did in this case. (R.p. 588). While no discussion or analysis of this evidence was provided, there is nothing in the Social Security Act or regulations that require the Appeals Council to explain its rationale for denying review any more so than it did in this case. Meyer, 602 F.3d at 705.

       Nevertheless, the Meyer court also noted that it was "certainly mindful that 'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review'". Meyer, 662 F.3d at 706 (citing Martinez v. Barnhart, 444 F.3d 1201, 1207-1208 (10th Cir. 2006)). The Meyer court then went on to hold that, where the treating physician in that case had submitted a letter to the Appeals Council detailing Plaintiff's injuries and recommending significant restrictions on Plaintiff's activity, it "simply [could not] determine whether substantial evidence support[ed] the ALJ's denial of benefits . . . ", because the ALJ, in rendering his decision, had



specifically emphasized that the record *before him* did not include any restrictions from the treating physician. Id. Therefore, the Meyer court reversed the judgment of the District Court and remanded for rehearing by the Social Security Administration.

The case presently before the Court is subject to reversal for this same reason. In his decision, the ALJ found that his conclusion that Plaintiff did not have deficits in adaptive functioning sufficient to meet the requirements of Listing 12.05 was supported by the evidence because there was no evidence that Plaintiff had been required to live in a highly supportive living arrangement, that Plaintiff had a lengthy work history in a family run business where she had demonstrated a level of understanding such as to show adaptive skills, and that she was able to pay her own bills and handle money including use a checkbook. (R.pp. 603-605). In reaching this conclusion, the ALJ specifically gave little weight or credibility to Turner's testimony at the hearing with respect to Plaintiff's limitations in these areas, finding that Turner had admitted to having limited information regarding Plaintiff's school or drug history or with respect to her ability to work and perform her job. (R.pp. 606-608). However, the affidavits submitted by Plaintiff on appeal to the Appeals Council are from family members who *do* have direct knowledge of these facts and issues and therefore fill this evidentiary gap. Cf. Wyns-Bills v. Colvin, No. 14-3353, 2015 WL 5117018 at * 6 (D.S.C. Aug. 31, 2015) [Remanding under Meyer analysis where pharmacy records submitted to Appeals Council filled an "evidentiary gap"]. These individuals specifically address the facts and issues of which the ALJ found Turner had limited knowledge, and provide information that is contrary to the ALJ's findings with respect to Plaintiff's ability to work and maintain a full time job and with respect to her school history and ability to function independently.

As was noted in Meyer, courts should affirm an ALJ's denial of benefits after



reviewing new evidence presented to the Appeals Council where, even with this new evidence, substantial evidence support the ALJ's findings. However, reversal is required if on consideration of the record as a whole, the court "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits . . . ." Meyer, 662 F.3d at 707. In Meyer, such was found to be the case where the new evidence was evidence from a treating physician that provided evidence the ALJ said in his decision he did not have, and which corroborated other evidence that the ALJ had rejected. Although the evidence at issue in Meyer was evidence from a treating physician, the fact situation is the same here. Cf. Gant v. Colvin, No. 14-3676, 2015 WL 7871173 at * * 8-9 (D.S.C. Dec. 3, 2015) [Applying Meyer analysis to evidence from lay witnesses submitted to Appeals Council], adopted by, 2015 WL 8042036 (D.S.C. Dec. 4, 2015). The ALJ rejected Turner's testimony because, he found, Turner did not have knowledge of the facts (Plaintiff's work and school history) which were at issue. Plaintiff then provided evidence to the Appeals Council specifically addressing these issues, which supports Plaintiff's testimony (which the ALJ rejected) as to the extent of her limitation in these areas. Therefore, "[o]n consideration of the record as a whole, [this court] simply cannot determine whether substantial evidence supports the ALJ's" decision, as "no fact finder has made any findings as to [the new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance". Meyer, 662 F.3d at 707.

There is no way for this Court to know what the ALJ's decision would have been if, at the time the case was before him for decision, this evidence from Plaintiff's brothers and cousin, specifically addressing the issues on which the ALJ concluded Turner had no knowledge, had been



considered. While it is certainly possible that the ALJ on remand might still reach the same conclusions as are set forth in the decision, that is a finding that must be made by the ALJ, not by this Court in the first instance. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."]; Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."].

Therefore, this case should be reversed and remanded for further consideration of whether Plaintiff has significantly sub-average general intellectual functioning with deficits in adaptive functioning sufficient to meet the criteria of Listing 12.05 in light of this new evidence.

**Evidence on Work Restrictions**

In addition to the new evidence problem discussed above, the undersigned is also constrained to note another issue that must be addressed in this case. The ALJ specifically found in his decision that, with regard to concentration, persistence or pace, Plaintiff had moderate difficulties. (R.p. 603). To account for this limitation (as well as his finding that Plaintiff also had mild difficulties in social functioning and in her activities of daily living), the ALJ limited Plaintiff to jobs requiring only simple repetitive tasks without ongoing interaction with the general public. (R.pp. 605, 608).

The ALJ having restricted the Plaintiff to work involving only simple, repetitive tasks without ongoing interaction with the general public was a not uncommon way of addressing the



14

functional findings set forth in the decision at the time the decision was issued in 2014. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; McDonald v. Astrue, 293 Fed. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]; see also Hyser v. Astrue, No. 11-102, 2012 WL 951468 at * 6 (N.D.Ind. Mar. 20, 2012)[Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning]. This Court has itself upheld such a finding as sufficient in some earlier decisions.

However, subsequent to the issuance of the ALJ's decision in this case, the Fourth Circuit decided the case of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), wherein it was specifically held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work'". Mascio, 780 F.3d 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). That is exactly what the ALJ did in this case. (R.pp. 602-603, 605, 608). After Mascio, however, such a summary finding is no longer sufficient, as the Fourth Circuit has held that the ability to perform simple, routine tasks is not the same as having the ability to *stay on task*, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace.[7] Mascio, 780 F.3d 638; see also McPherson v. Colvin, No. 16-1469, 2016 WL

---

[7]Notably, part of the new evidence submitted to the Appeals Council specifically addresses Plaintiff's inability to concentrate or stay focused, even on something with which she is familiar or knows how to do. The ALJ did not have an opportunity to consider this evidence in rendering his
(continued...)

15



5404471 at * 8 (E.D.Pa. Sept. 28, 2016)[where the court rejected that moderate restrictions in concentration, persistence, and pace were accommodated by a hypothetical to a VE that only included: 1) the performance of routine, repetitive tasks; 2) a low stress environment (defined as no frequent independent decision making required and no frequent changes in the work setting); and 3) no public interaction and occasional interaction with coworkers and supervisors](and citing Varga v. Colvin, 794 F.3d 809, 815 (7th Cir. 2015)); Carr v. Colvin, No. 15-685, 2016 WL 4662341, at *10 (D. Md. Sept. 7, 2016)[Finding that the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to only occasional contact with supervisors, co-workers, and the public accounts for Plaintiff's moderate difficulties in social functioning, but does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace].

As noted, the ALJ did not have the benefit of the Fourth Circuit's decision in Mascio to guide him at the time he reached the decision in this case, and therefore no discussion or finding was made with respect to Plaintiff's ability to stay on task in light of his moderate limitation in concentration, persistence or pace. This omission is particularly important here, as the VE specifically testified that if Plaintiff was unable to sustain a competitive work pace for at least twenty percent of the time, she would not be able to perform the jobs identified in the decision. (R.p. 632). Hence, while it may be that the ALJ will find, based on the evidence, that Plaintiff's moderate impairment in being able to concentrate and stay on task will not affect her ability to stay on task sufficient to perform the routine, simple work identified in the decision; See Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration,

---

[7](...continued)
decision.



persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; since he did not make that determination or finding in his decision, this Court may not do so in the first instance. Pinto, 249 F.3d at 847 [Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray, 554 F.3d at 1225 ["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have thinking."].

      In sum, while the Administrative Law Judge did not have the benefit of this new authority in reaching his decision in his case, Plaintiff's disability claim must nonetheless be evaluated in light of current requirements which are binding on this Court. Additionally, the error by the Appeals Council in the consideration of the new evidence submitted must also now be addressed by the ALJ. Therefore, this case should be reversed and remanded for consideration of Plaintiff's RFC under the updated case law and requirements for considering Plaintiff's ability to work in light of her moderate limitation in concentration, persistence or pace, and after due consideration of the new evidence submitted to the Appeals Council with respect to Plaintiff's work, school and other abilities and the effect this may have on the overall evidence relating to her level of deficits in adaptive functioning. With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].



**Plaintiff's Request for an Award of Benefits**

Finally, Plaintiff is not entitled to have this case remanded for an award of benefits at this time. While her frustration at having another remand for further proceedings is understandable, the ALJ is not responsible for the errors set forth herein, as they are based on actions taken by the Appeals Council subsequent to the decision and on Fourth Circuit precedent that was also decided after he had issued his decision. As such, a decision on whether substantial evidence supports a denial of disability has simply not yet been made. Laws, 368 F.2d at 642 [The court lacks the authority to substitute its own judgment for that of the Commissioner].

As correctly noted by the Commissioner, "a case should be remanded for disability benefits only when the record has been fully developed, all essential factual issue have been resolved, and the record adequately establishes a Plaintiff's entitlement to benefits". Plaintiff's Brief, p. 24, citing to Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000); cf. Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ["Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with instructions to award benefits to [Plaintiff], the district court should have vacated and remanded with instructions for the ALJ to clarify why [Plaintiff] did not satisfy Listing 1.04A."]. Therefore, remand for further proceedings is the appropriate remedy in this case.

**Conclusion**

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence 4 of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for re-evaluation



of the evidence as set forth hereinabove, and for such further administration action as may be necessary.  See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 8, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

